(No. 1201, January 12, 1909.)

## IN THE MATTER OF THE CHARGES AGAINST W. J. HITTSON, MEMBER OF THE BAR OF THIS COURT.

### SYLLABUS.

Respondent wrote his client, who was in jail charged with murder, requesting him to sign notes to pay for respondent's services, stating that the client had a pretty hard case, but if the client would do as respondent said, he would bring him through, but money would have to be raised or the notes signed. The client did not send the notes, and employed other counsel, and respondent, hearing of it, wrote him as follows: "If you go to trial without me in your case, I will bet you, you hang. Will bet you the best suit of clothes made. You had better get busy." Held, that respondent's conduct was highly improper, warranting his suspension from practice for two years.

JAMES M. HERVEY, Attorney General, GEORGE S. KLOCK and A. B. RENEHAN, for the Relator.

T. B. CATRON for the Respondent.

No Briefs.

### OPINION OF THE COURT.

ABBOTT, J.—This proceeding is based on certain charges filed with the clerk of this court, February 27, 1907, by the Attorney General of the Territory and the Committee on Grievances of the Bar Association. At the August session of the January 1908 term a hearing was given by this court at which evidence was taken and the arguments of counsel heard. At the close of the evidence in support of the charges the court dismissed the first and second charges on the ground that there was not sufficient evidence to sustain them. The third charge is based on two letters written by the respondent to one Cabe Adams, while he was confined in jail charged with the murder of Warren B. Middleton. It appeared from the evidence that Adams had a ranch about 18 miles from Tucumcari where Hittson was practicing law, and that he had been employed

as Adams' attorney in certain matters. He had also become surety on a bond for Adams. On or about May 1, 1905, he heard that Adams had taken a train with the intention of going to Montana to remain. He telegraphed the sheriff at Dalhart, the road Adams had taken to stop him, which the sheriff did. The respondent as he testified went the next day to Adams' ranch to learn whether he had property there sufficient to make him secure on his obligation for Adams. Being satisfied on that point he telegraphed the sheriff to allow Adams to go on his way, which he did. While at the ranch or in the neighborhood the respondent said he had a talk with Mrs. Adams about getting a divorce from her husband, but did not come to anything definite about it. On May 12th, however, he said she came to his office in Tucumcari and executed an application for a divorce. He wrote Adams asking him to accept service in the divorce proceeding. Adams wrote him two letters on the subject, the gist of them being that he had no objection to the divorce if his wife wanted it provided she made "no false accusations" against him. At about the same time the respondent began proceedings to obtain a divorce from Warren B. Middleton, a man living in the vicinity of Tucumcari, and evidently acting in concert with Mrs. Adams. The respondent in reply to one of Adams' letters wrote him: "And as for her, she never was here but once, and I never talked to her about the divorce in my life. When Middleton told me she wanted a divorce, I just made up the papers and sent them to her for her signature and she signed them." This statement his testimony in court squarely contradicts. Before the decrees for the divorces were actually signed, but as the respondent said through some misunderstanding, and with the belief on his part that they had been signed, he notified Middleton and Mrs. Adams that the divorces had been granted and they were married the same day. Not long afterwards Adams returned from Montana, killed Middleton by shooting him, was arrested, held for trial on a charge of murder, and while in jail awaiting trial had correspondence with the respondent in relation to defending him and procured

the payment of $50.00 to him, which the respondent said he regarded as a retainer. He sent Adams notes to be executed in further payment for his services as appears from the following letter:

"Commercial Law                    Collection solicited
     a specialty                        Money to Loan
                    W. J. HITTSON
                    Attorney at Law.
                    Tucumcari, N. M., Dec. 8th, 1905.
Mr. Cabe Adams,
   Raton, N. M.
Dear Friend:
     I received your letter of the 5th today and I am answering it I sent you the notes the other day and have not heard from you since I sent you two notes by Ridley, and I want you to have them signed at once and return them 'o me for Cabe you have got a pretty hard case and it will take some money to beat it but if you will do as I tell you I will beat it, I know more about that case than any one and I will bring you thru but you must raise me some money or fix up those notes as everything I do costs me money, so get them signed at once and return them to me as soon as possible. I am.
                    Yours truly,    W. J. HITTSON."
     Adams did not send him the notes and employed other counsel, which fact was made known to the respondent who thereupon sent Adams this letter:
"A. A. Blankenship, Pres.          M. H. Smith, Vice-Pres.
               W. J. Hittson, Secy. and Treas.
                    Attorney at Law.
                    Money to Loan.
          THE AMERICAN BLAB & RUBBER CO.
               Incorporated for $200,000.
John J. Pace, Business Manager.
                    Tucumcari, N. M. Dec. 28th, 1905.
Cabe Adams:
     If you go to trial without me in your case I will bet you you hang Will bet you the best suit of clothes made. You had better get busy.                    W. J. HITTSON."

That the last letter especially was under such circumstances highly improper and unprofessional there can, we think, be no question with honorable lawyers. In view of the respondent's youth and in the hope that he will profit by this experience to adopt and conform to a higher standard of professional conduct in the future, we refrain from disbarring him, but suspend him from practice in this court and in the several District Courts of the Territory for the period of two years, and, it is so ordered.

Mann, A. J., did not take part in this case.